IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JESIL ABRAHAM WILSON,         )
                                    )
                Petitioner,      )
                                    )
vs.                              )      Case No. 02-CV-323-CVE-PJC
                                    )
STATE OF OKLAHOMA;        )
TULSA COUNTY; JUSTIN JONES,    )
                                    )
             Respondents.     )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action remanded by the Tenth Circuit Court of

Appeals. <u>See</u> Dkt. # 29. Petitioner challenges his First Degree Murder conviction entered in Tulsa

County District Court, Case No. CF-98-4839. As determined by the Tenth Circuit, Petitioner's

primary claim is that his attorney provided constitutionally ineffective assistance in connection with

his pre-trial certification for trial as an adult on a murder charge arising out of a shooting that

occurred when he was thirteen (13) years old. In this Court's prior Order denying habeas relief, <u>see</u>

Dkt. # 20, the Court determined that Petitioner's claim was procedurally barred and that he had

failed to demonstrate cause and prejudice to overcome the bar. In its remand order, the Tenth Circuit

suggested that this Court:

> may well begin with additional consideration of the State's procedural bar defense
> and Wilson's associated claim of appellate ineffectiveness, neither of which has thus
> far been conclusively established or negated . . . If the court reaffirms that the
> defense is available, it would still have to determine, de novo, whether the basis for
> invoking the bar here, i.e., the absence of any appellate challenge to certification
> counsel's performance, was itself a function of ineffective assistance of counsel
> excusing the bar.

<u>See</u> Dkt. # 29 at 6.

By Order filed January 16, 2007 (Dkt. # 32), the Court appointed counsel for Petitioner and directed the parties to brief the remanded issues. On March 2, 2007, Respondent filed his response (Dkt. # 36).  On August 3, 2007, Petitioner filed his reply (Dkt. # 43). Petitioner has also filed a renewed application for hearing (Dkt. # 44) and an application for status conference (Dkt. # 45).

The Court has carefully reviewed the parties' arguments and the relevant state court record. For the reasons discussed below, the Court finds Petitioner's claims of ineffective assistance of certification counsel are procedurally barred and he has failed to demonstrate cause and prejudice to overcome the bar.  The Court further finds that an evidentiary hearing is not necessary.  The petition for writ of habeas corpus shall be denied.  Petitioner's application for hearing shall be denied and his application for status conference shall be declared moot.

## BACKGROUND

The record demonstrates that on January 3, 1997, Mitchell Knighten ("Knighten") was shot and killed at an apartment located in Tulsa, Oklahoma.  Petitioner Jesil Wilson, who was thirteen (13) years old, approximately three (3) weeks shy of his fourteenth birthday, and his cousin, Zachary Ferguson ("Ferguson"), had formulated a plan to retrieve Petitioner's handgun from Knighten.[1] They planned to confront Knighten about the gun and if he failed to return it, Ferguson was to shoot Knighten in the back in order to paralyze him. A security videotape obtained from the apartment complex showed three (3) figures outside Knighten's apartment. Two of the figures wore clothes

_____

[1] The victim's brother, Nico Knighten, testified at Petitioner's trial that on New Year's Eve, or three (3) days before the shooting, the victim took Petitioner's .22 caliber handgun away from him while they were at Skate World after Petitioner discharged the gun twice inside the rink after a riot broke out. See Dkt. # 38, part 5, Tr. Trans. Vol. I at 60-61. Petitioner's friend, Kelvin Kelly, testified that Petitioner was upset about his gun being taken away from him and talked over the ensuing weekend about getting it back. Id. at 138-139.

2

matching the clothing worn by Petitioner and Ferguson. In the video, Petitioner was at Knighten's apartment door, with Ferguson concealed around the corner of the apartment. The video showed that Petitioner backed away as Ferguson shot the victim. The third person who was present in the video, Bo Thomas, watched. As a result of Knighten's shooting death, Ferguson was charged with First Degree Murder, in Tulsa County District Court, Case No. CF-1997-85. On September 5, 1997, Ferguson was found by a jury to be guilty as charged. On October 3, 1997, he was sentenced in accordance with the jury's recommendation to life imprisonment without the possibility of parole.

On June 25, 1998, approximately nine (9) months after Ferguson's trial and after a charge of Accessory to Murder had been filed against Petitioner in Tulsa County District Court, Juvenile Division, Petitioner's mother, Cinderella Ferguson, filed a petition for protective order against her son, Jesil Wilson.  See Dkt. # 1, attachment. An Emergency Protective Order was entered that day in Tulsa County District Court, Case No. PO-1998-1915. Id. On July 30, 1998, the juvenile court judge, Judge Chappelle, held a hearing on the prosecutive merit of the charge of Accessory to First Degree Murder. See Dkt. # 1, attached "order certifying juvenile respondent to stand trial as an adult." Thereafter, on September 17, 1998, a second hearing was held in the juvenile case to determine whether to certify Petitioner to stand trial as an adult. Id. At the conclusion of the second hearing, Judge Chappelle ruled that Petitioner should be held accountable as an adult. Id. Although the order certifying Petitioner to be tried as an adult was a final appealable order, see Okla. Stat. tit. 10, § 7303-4.3(F) (Supp. 1997), there was no appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). At the hearings in juvenile court, Petitioner was represented by attorney Cliff Stark.

On September 21, 1998,[2] as a result of Judge Chappelle's ruling that Petitioner should be tried as an adult, Petitioner was charged in Tulsa County District Court, Case No. CF-1998-4839, with Accessory to Murder in relation to the death of Mitchell Knighten. On October 27, 1998, an amended information was filed, amending count 1 to First Degree Murder, and adding Count 2, Accessory to Murder. The record for Case No. CF-1998-4839, see Dkt. # 38, part 1, reflects that on October 28, 1998, Petitioner, represented by attorney Michael French ("French"), passed the preliminary hearing to November 4, 1998. On October 29, 1998, Petitioner filed an application for certification as a child pursuant to Okla. Stat. tit. 10, § 7306-1.1(E) (Supp. 1997).

On November 4, 1998, the court held a preliminary hearing and heard Petitioner's motion to be certified as a child. Only 48 days had passed since Petitioner had been certified to stand trial as an adult on the charge of Accessory to Murder. At the hearing held November 4, 1998, the district court judge, Judge Singer, considered and denied Petitioner's application for reverse certification as a child and he was bound over for trial as an adult on Count 1, First Degree Murder. Count 2 was dismissed. Petitioner was represented at the hearing by attorney French. Five (5) days later, French was allowed to withdraw as attorney of record.  In his motion to withdraw, French stated that he lacked experience in defending a First Degree Murder charge and that Petitioner's family was unable to pay for representation. See Dkt. # 43, Ex. 4. On November 9, 1998, Assistant Public Defender Gregg Graves ("Graves") was appointed to represent Petitioner. Although the order denying Petitioner's application for reverse certification as a child was a final appealable order, see Okla. Stat. tit. 10, § 7306-1.1(G) (Supp. 1997), neither French nor Graves appealed the denial of

---

[2]The Court notes that almost one full year had passed since Ferguson had been sentenced to life without the possibility of parole following his conviction for First Degree Murder.

Petitioner's application to be certified as a child to the OCCA.

On June 9-10, 1999, Petitioner, represented by attorney David C. Phillips, III ("Phillips"), was tried by a jury.  At the conclusion of the trial, Petitioner was found guilty of First Degree Murder.  The jury recommended a sentence of life imprisonment with the possibility of parole and a $10,000 fine.  On August 19, 1999, the trial court sentenced Petitioner in accordance with the jury's recommendation.

Petitioner appealed to the Oklahoma Court of Criminal Appeals ("OCCA").  Represented by attorney Kimberly D. Heinze ("Heinze"), Petitioner raised four (4) propositions of error, as follows:

> Proposition 1:  Key evidence corroborating Appellant's theory of defense was kept from the jury by a trial court that also refused instruction on the defense theory of the case, in violation of Wilson's constitutional rights.
>
> Proposition 2:  The trial court erred in failing to instruct upon self-defense or defense of another.
>
> Proposition 3:  The evidence was insufficient to prove that Wilson was a principal to the crime charged, even as an aider and abettor, and the conviction must be reversed with instructions to dismiss.
>
> Proposition 4:  The cumulative effect of all the errors addressed above deprived Appellant of a fair trial.

(Dkt. # 4, Ex. A).  On November 29, 2000, the OCCA entered its unpublished summary opinion (Dkt. # 4, Ex. D) affirming the Judgment and Sentence of the trial court.

On October 12, 2001, Petitioner, appearing *pro se*, filed an application for post-conviction relief (Dkt. # 1, Ex. 1) in the state district court.  By order filed February 1, 2002 (Dkt. # 1, Ex. 3; Dkt. # 4, Ex. E), Petitioner's request for post-conviction relief was denied.  The state district court recognized and rejected the following claims:

    1.       That he was denied effective assistance of appellate counsel for counsel's failure to raise "dead-bang reversible error" on direct appeal.

    2.       That trial counsel was ineffective during certification/preliminary hearing for:
          a.      failing to properly investigate the petitioner's case,
          b.      failing to prepare and file a motion to suppress the Petitioner's confession,
          c.      failing to call witnesses,
          d.      failing to introduce past acts of violence by the victim, and
          e.      waiving competency issues.

See Dkt. # 1, Ex. 3.  Petitioner appealed to the OCCA.  By order filed March 14, 2002, in Case No. PC-2002-260 (Dkt. # 1, Ex 6; Dkt. # 4, Ex. G), the OCCA affirmed the denial of post-conviction relief.    In its order, the OCCA recognized that Petitioner had raised the following claims of error: 1) the District Court lost jurisdiction over the case "in that it failed to complete the court in binding me over to adult court out of reverse certification as a minor child"; 2) he was denied his privilege against self-incrimination by the juvenile judge; 3) the state presented insufficient evidence of "premeditated murder"; and 4) he was denied effective assistance of appellate counsel.  See Dkt. # 1, Ex. 6; Dkt. # 4, Ex. G.

On April 25, 2002, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Although Petitioner was not represented by counsel, the petition was prepared "by and through: Legal Services, Inc." and bears the name of Alan James McDonald, paralegal.  Mr. McDonald is an inmate in custody of the State of Oklahoma.  As this Court stated in its prior Order denying habeas corpus relief, see Dkt. # 20, the petition is not a model of clarity as it fails to set forth separately identified claims warranting habeas corpus relief.  This Court determined that Petitioner raised the following challenges to his conviction: (1) alleged irregularities at the preliminary hearing and the hearing on Petitioner's application for certification as a child, including ineffective assistance of counsel Michael French for (a) failing to prepare and having no experience with representing a

juvenile defendant in a capital case, (b) voluntarily combining into one proceeding the preliminary hearing and the certification hearing, (c) failing to file a motion in limine or motion to suppress to prevent introduction of prejudicial statements made during interviews at the scene of the shooting, (d) failing to present Petitioner's defense, and (e) failing to move for a competency evaluation; and (2) improper imposition of a procedural bar by the state courts on his claims asserted in his application for post-conviction relief. Significantly, Petitioner did not raise a separate claim of ineffective assistance of appellate counsel in his petition.[3]   Nonetheless, this Court liberally construed Petitioner's reply to Respondent's response as asserting a claim of ineffective assistance of appellate counsel as cause to overcome the procedural bar applicable to his claims regarding the certification hearing.

In response to the remanded issues, Respondent maintains that Petitioner's claims of ineffective assistance of certification counsel are procedurally barred and that Petitioner has failed to demonstrate "cause" to overcome the bar.  Respondent also asserts that additional arguments asserted as cause that were not raised in the petition, but were raised either by this Court or in argument before the Tenth Circuit, can only be denied, pursuant to 28 U.S.C. § 2254(b), because they have never been presented to the state courts and are unexhausted and procedurally barred under the facts of this case.  In reply, Petitioner argues that his claims are not procedurally barred

---

[3]In considering Petitioner's appeal from this Court's Order denying habeas corpus relief, the Tenth Circuit Court of Appeals appointed counsel to represent Petitioner.  The attorney for Petitioner stated to the appellate court that Petitioner's appeal raised two issues: first, ineffective assistance of certification counsel, and second, ineffective assistance of direct-appeal counsel.  See Appellant's reply brief, 2006 WL 1354142. However, a separate claim of ineffective assistance of appellate counsel was not before this Court because it was not raised in the petition.  This Court gave liberal construction to Petitioner's reply brief and found that he had raised ineffective assistance of appellate counsel as "cause" to overcome the procedural bar applicable to his ineffective assistance of certification counsel claims.

and, further, even if there were a procedural bar, examination of the underlying claim as required by the Tenth Circuit, reveals that the claim, ineffective assistance of certification counsel, is meritorious.

***ANALYSIS***

**A.      Exhaustion/Evidentiary Hearing**

The only claims that are exhausted in this case are the claims raised on direct and post-conviction appeal.  Any additional claim is unexhausted and cannot provide a basis for habeas corpus relief. 28 U.S.C. § 2254(b). The Court can, however, deny habeas relief on an unexhausted claim. 28 U.S.C. § 2254(b)(2).

In the Order remanding this matter (Dkt. # 29), the Tenth Circuit declined to direct this Court to hold an evidentiary hearing on the adequacy of Petitioner's legal representation in the certification process, finding such direction would be premature. In responding to the remanded issue, Respondent argues that Petitioner is not entitled to an evidentiary hearing. See Dkt. # 36. Petitioner maintains that he is entitled to an evidentiary hearing. See Dkt. # 43. On January 28, 2008, Petitioner filed a "renewed application for hearing" (Dkt. # 44).

Petitioner's requests for a hearing shall be denied. Under 28 U.S.C. § 2254(e)(2), a federal district court is prohibited from conducting an evidentiary hearing on a habeas claim that petitioner failed to develop in state court, unless one of the specified exceptions is applicable. The record demonstrates that in his application for post-conviction relief, see Dkt. # 1, attached application at 14, Petitioner requested an evidentiary hearing in the state district court. In the order denying post-conviction relief, the state district court determined that "the matter under consideration does not present any genuine issue of material fact requiring a formal hearing with the presentation of

8

witnesses and the taking of testimony." Id., attached order originally filed December 3, 2001, and later re-entered on February 1, 2002.  As part of his post-conviction appeal, Petitioner filed a separate "application for evidentiary hearing and Petitioner's supplementation of facts." See Dkt. # 1, attached motion, filed February 28, 2002. The matter was not remanded to the state district court for evidentiary hearing and by order filed March 14, 2002, the OCCA affirmed the denial of post-conviction relief.

The record reflects that Petitioner diligently sought an evidentiary hearing on his claims of ineffective assistance of appellate counsel in his post-conviction proceedings.  In addition, Petitioner supported his application for post-conviction relief with the affidavits of his mother and grandmother. See Cannon v. Mullin, 383 F.3d 1152, 1177 (10th Cir. 2004) (finding that the restrictions under § 2254(e)(2) should be enforced "when the applicant for relief has not presented evidence that would be readily available if the claim were true"). Therefore, there was no lack of diligence during the state post-conviction proceedings and Petitioner has not "failed to develop" the facts as required for application of § 2254(e)(2). If a petitioner did not fail to develop the factual basis of his claim in state court, he is excused from showing compliance with the balance of the subsection's requirements. Williams v. Taylor, 529 U.S. 420, 437 (2000). When § 2254(e)(2) is not applicable, a federal habeas court should proceed to analyze whether a hearing is appropriate or required under pre-AEDPA standards. Under pre-AEDPA standards, a petitioner is entitled to an evidentiary hearing on the issue of ineffective counsel so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief.  See Young v. Sirmons, 486 F.3d 655, 679 (10th Cir. 2007) (citing Hammon v. Ward, 466 F.3d 919, 927 (10th Cir. 2006)).

In this case, for the reasons discussed in more detail below, the existing factual record, as provided by the parties on remand, does not support Petitioner's request for habeas corpus relief based on ineffective assistance of appellate counsel for failing to raise claims of ineffective assistance of certification counsel on direct appeal.   Therefore, under pre-AEDPA standards, Petitioner is not entitled to an evidentiary hearing.  His requests for an evidentiary hearing, including his most recent motion for a hearing (Dkt. # 44), shall be denied.

**B.      Procedural bar**

The procedural complexities of the ineffective assistance of certification counsel claims in this case leads the Court to conclude that it would be more efficient to address the merits of those claims rather than resolve their procedural status. Nonetheless, the Court will address Respondent's procedural bar defense in light of the Tenth Circuit's directives. For the reasons discussed below, the Court finds the claims are procedurally barred.  The merits of the claims are considered and rejected, however, in analyzing whether ineffective assistance of appellate counsel serves as "cause" to overcome the procedural bar applicable to the underlying claims of ineffective assistance of certification counsel.

As stated in this Court's prior Order, the doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A

state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'"  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)).

In this case, Petitioner's allegations of error arising from the preliminary hearing and the hearing on Petitioner's motion to be certified as a child were first presented to the OCCA on post-conviction appeal.  The OCCA imposed a procedural bar on the claims, holding as follows:

> [w]e find Petitioner has failed to establish entitlement to relief in this post-conviction proceeding.  Except for his claim of ineffective assistance of appellate counsel, the propositions of error asserted by Petitioner in his post-conviction application either were or could have been raised in the direct appeal of his conviction.  All issues not raised in a direct appeal that could have been raised are waived. *Webb v. State*, 1991 OK CR 38, ¶ 6, 835 P.2d 115.  Further, any claim that was raised and ruled upon by this Court on direct appeal is res judicata and may not be the basis of a post-conviction application. *Id.*

(Dkt. # 4, Ex. G).   Thus, the state appellate court found that the claims were procedurally barred because they could have been but were not raised on direct appeal.

Applying the principles of procedural default to this case, the Court concludes that Petitioner's claims of ineffective assistance of certification counsel at the hearing on the application for certification as a child, are procedurally barred.  The OCCA's procedural bar is an "independent" state ground because Petitioner's failure to comply with state procedures "was the exclusive basis for the state court's holding." Maes, 46 F.3d at 985.  The Court also finds that the bar imposed by the OCCA on Petitioner's claims of ineffective assistance of certification counsel is based on state law grounds adequate to preclude federal review.  When the underlying claim is ineffective assistance of counsel, the Tenth Circuit Court of Appeals has ruled that:

11

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone.  All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims [Rule 3.11(B)(3)(b)] is adequately and evenhandedly applied.

English v. Cody, 146 F.3d 1257, 1264 (10th Cir. 1998) (citation omitted).

Thus, under English, this Court must recognize and uphold the procedural bar imposed by the OCCA if Petitioner was represented by different attorneys at trial and on direct appeal, and if the procedurally barred claims could either be resolved if raised on direct appeal upon the trial record alone or if Oklahoma's remand procedure under Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, ch. 18, app., for ineffective assistance of trial counsel claims raised on direct appeal is unevenly applied or otherwise inadequate.  The first requirement is satisfied in this case.  Petitioner complains of assistance provided by French. The record reflects that French was allowed to withdraw from representation on November 9, 1998, or five (5) days after the preliminary hearing. At the same time, Graves was appointed to represent Petitioner. See Dkt. # 38.  Petitioner was represented at trial by Phillips. Id. On appeal, Petitioner was represented Heinze.  For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel five (5) days after the trial court denied his motion to be certified as a child, with a different attorney at trial, and with yet another different attorney on appeal.

The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. Id. at 1263-64.  Rule 3.11(B)(3)(b) provides authority for the OCCA to remand ineffective assistance of trial counsel claims raised on direct appeal for additional factual

development. When a claim of ineffective assistance of trial counsel requiring supplementation of the record has been defaulted by failure to raise the claim on direct appeal, and is procedurally barred by the OCCA on post-conviction appeal, a habeas petitioner must allege that the Oklahoma remand procedure, as provided by Rule 3.11, was in some way inadequate to allow him to supplement the record had he raised his claim on direct appeal. See Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999) (once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure).

In this case, Petitioner's claims of ineffective assistance of certification counsel could have been, in large part, resolved upon the record from the reverse certification hearing alone. Certification counsel's inexperience, the procedural posture of the hearing, the lack of a motion to suppress, and the lack of a motion to determine competency are all evidenced in the record. Furthermore, to the extent Petitioner's claims of ineffective assistance of certification counsel required further development of the record, Petitioner has failed to point to specific inadequacies of the OCCA's remand procedure as provided by Rule 3.11 despite Respondent's assertion that the imposition of a procedural bar on Petitioner's claims of ineffective assistance of certification counsel is independent and adequate to preclude federal habeas review. Hooks, 184 F.3d at 1217. He has not asserted that the OCCA does not regularly follow the rule or that the rule is not evenhandedly applied to similar cases. Instead, Petitioner simply argues that Rule 3.11 is "inapplicable" since there was no assertion of ineffective assistance of counsel in the brief-in-chief filed by Petitioner's appellate counsel. See Dkt. # 43 at 26. That statement, however, misses the point. Rule 3.11 provides a procedural mechanism for direct appeal review of ineffective assistance of counsel claims

requiring supplementation of the record. If an appellant fails to raise a claim of ineffective assistance of trial counsel on direct appeal and the OCCA subsequently imposes a procedural bar on the claim raised on post-conviction appeal, then once the respondent raises the affirmative defense, this Court must recognize the procedural bar unless the petitioner alleges specific inadequacies in the available procedural mechanism provided by Rule 3.11. In other words, a petitioner must argue that even if a claim of ineffective assistance of trial counsel requiring supplementation of the record had been raised on direct appeal, the procedural mechanism provided by Oklahoma, Rule 3.11, does not provide for meaningful review of the claim.

Because Respondent argued that the procedural bar imposed by the OCCA was independent and adequate to preclude federal habeas review, the burden shifted to Petitioner to allege that the procedural mechanism for review of ineffective assistance of counsel claims requiring supplementation of the record available under state law, Rule 3.11, is somehow inadequate and that this Court should consider the merits of the claim despite his default of the claim on direct appeal in state court. Petitioner has failed to cite with specificity to inadequacies of the state procedural mechanism. The Court concludes that Petitioner has failed to demonstrate that the OCCA's procedural bar was based on grounds inadequate to preclude federal habeas review and his claims of ineffective assistance of counsel as to French are procedurally barred.

As a result of the procedural bar, this Court may not consider these claims unless Petitioner demonstrates either "cause and prejudice" for the default, or that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 510 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941042 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural

rules." Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 494 (1991).

### 1. Cause and prejudice

In this Court's prior Order denying habeas corpus relief, see Dkt. # 20, the Court liberally construed Petitioner's reply to contain an assertion that ineffective assistance of appellate counsel was cause for the procedural default of the claim related to certification counsel's performance. The record reflects that Petitioner did raise a claim of ineffective assistance of appellate counsel in his post-conviction proceeding in state court. See Dkt. # 1, attachment. On post-conviction appeal, the OCCA rejected Petitioner's claim of ineffective assistance of appellate counsel on the legal premise that "[t]he fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance or to preclude enforcement of a procedural default." See Dkt. # 4, Ex. G at 2. As emphasized by the Tenth Circuit, that premise deviates from the controlling federal standard. See Dkt. # 29 at 3. As a result, the OCCA's analysis of Petitioner's claim of ineffective assistance of appellate counsel is not entitled to deference on federal habeas corpus review. See id. (citing Cargle v. Mullin, 317 F.3d 1196, 1202-05 (10th Cir. 2003)). Therefore, this Court will conduct a de novo review of Petitioner's ineffective assistance of appellate counsel claim to determine whether it constitutes cause to overcome the procedural bar applicable to Petitioner's claims of ineffective assistance of certification counsel.

In evaluating a claim of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for claims of ineffective assistance of trial counsel. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). To establish ineffective assistance of counsel a petitioner must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A petitioner can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then

counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Id.; see also

Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing Cook, 45 F.3d at 392-93). If the

issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct

appeal was deficient and prejudicial.  Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394.

Petitioner complains that the following issues were omitted by appellate counsel on direct

appeal: ineffective assistance of counsel Michael French for (a) failing to prepare and having no

experience with representing a juvenile defendant in a capital case, (b) voluntarily combining into

one proceeding the preliminary hearing and the certification hearing, (c) failing to file a motion in

limine or motion to suppress to prevent introduction of prejudicial statements made during

interviews at the scene of the shooting, (d) failing to present Petitioner's defense, and (e) failing to

move for a competency evaluation.  The Court has carefully reviewed the complete transcript from

the certification hearing, as well as other relevant records from the state court proceedings, and shall

address each issue on the merits.

*a. Failure to prepare/lack of experience with representing a juvenile defendant in a capital case*

As his first claim of ineffective assistance of certification counsel omitted by appellate

counsel on direct appeal, Petitioner alleges that French failed to prepare for the certification hearing

and lacked experience in representing a juvenile defendant charged with First Degree Murder. The

Court recognizes that in moving to withdraw, French admitted he lacked experience "in the defense

of murder charges." See Dkt. # 43, Ex. 4. Nonetheless, upon review of the transcript from the

certification hearing, the Court finds that, contrary to Petitioner's allegations, his attorney was

prepared to present witnesses and evidence relevant to the showing required to be certified as a

child.  Pursuant to Okla. Stat. tit. 10, § 7306-1.1(E) (Supp. 1997), the trial court was required to give

17

consideration to the following factors to determine whether the accused person should be certified

as a child to the juvenile division of the district court:

1.     Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

2.     Whether the offense was against persons or property, greater weight being given for retaining the accused person within the adult criminal system for offenses against persons, especially if personal injury resulted;

3.     The record and past history of the accused person, including previous contacts with law enforcement agencies and juvenile or criminal courts, prior periods of probation and commitments to juvenile institutions; and

4.     The prospects for adequate protection of the public if the accused person is processed through the juvenile system.

Okla. Stat. tit. 10, § 7306-1.1(E) (Supp. 1997).  Clearly, the first two factors weighed heavily against

Petitioner since the alleged offense, First Degree Murder, resulted in the death of Mitchell Knighten.

Petitioner's counsel presented witnesses who provided testimony beneficial to Petitioner as to the

third and fourth factors. During that part of the hearing concerning the motion to certify as a child,

French called Petitioner's grandmother, Faye Marie Ferguson, as a witness.  See Dkt. # 38, part 2,

Trans. at 51-55. She testified that Petitioner had lived with her for three (3) years and that she had

not had any problems with him. French also called Petitioner's mother, Cinderella Ferguson.  She

admitted that she had obtained an emergency protective order against Petitioner, see id. at 56-57,

but explained that she had requested it because she was experiencing stress and that she "took my

past anger out on Jesil." Id. at 58. She also testified that she had a "good relationship" with

Petitioner since he had gone to live with his grandmother and that he had never had physical troubles

with any neighbors.  Id. at 59.

Petitioner does not identify any other witnesses or credible evidence relevant to the factors under consideration that trial counsel failed to present. Although he provides the affidavit of his mother, offering further explanation for the emergency protective order, the Court notes that French specifically asked Ms. Ferguson about the circumstances surrounding the request for the protective order. Despite the opportunity to tell the court that her request for an emergency protective order was directly linked to her efforts to obtain counseling for her son, she testified only that she was under stress at the time. See id. at 57-58.

Petitioner also complains that certification counsel failed to object when the certification judge read from and relied on the opinion of another judge in another certification proceeding, without any part of the record of that earlier hearing being in evidence in the certification hearing. In making this argument, Petitioner ignores the fact that the opinion of Judge Chappelle cited by Judge Singer was from a prior stage of his own case, originally filed in the Juvenile Division. If the record is from a prior stage in the same controversy or is part of the record in the same proceedings, a court, in its discretion, may take judicial notice of the record. Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds* McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001); United States v. Estep, 760 F.2d 1060, 1063 (10th Cir. 1985) (citing IX Wigmore on Evidence § 2579 (Chadbourn rev. 1981)).  In citing to Judge Chappelle's ruling, Judge Singer stated, "it's already part of the court file." See Dkt. # 38, part 2, Trans. at 71. The evidence relied on by Judge Chappelle had been presented by the parties relevant to the factors set out in Okla. Stat. tit. 10, § 7303-4.3(B) (Supp. 1997).[4] The evidence considered by Judge Chappelle clearly

---

[4]The factors set out in Okla. Stat. tit. 10, § 7303-4.3(B), are to be considered by the juvenile division judge in resolving a motion to certify a juvenile as an adult and encompass the factors set out in Okla. Stat. tit. 10, § 7306-1.1(E), the factors to be considered by the district court judge in

overlapped and was, therefore, relevant to Judge Singer's ruling. There was no impropriety by Judge

Singer in recognizing the findings made by Judge Chappelle in a prior stage of the same case. This

claim of ineffective assistance of certification counsel is without merit.

> *b. Voluntarily combining the preliminary hearing and the certification hearing*

Next, Petitioner complains that his certification counsel agreed to combining the preliminary

hearing and the certification hearing.  The statute in effect at the time of the reverse certification

hearing provided, in pertinent part, as follows:

> E. The accused person shall file a motion for certification as a child before the start
> of the criminal preliminary hearing.  Upon the filing of such motion, the complete
> juvenile record of the accused shall be made available to the district attorney and the
> accused person.
>  At the conclusion of the state's case at the criminal preliminary hearing, the accused
> person may offer evidence to support the motion for certification as a child.
>  The court shall rule on the certification motion of the accused person before ruling
> on whether to bind the accused over for trial.

Okla. Stat. tit. 10, § 7306-1.1(E). Thus, the statute provides that the accused "may" offer evidence

in support of his motion at the conclusion of the state's case at the preliminary hearing and the

interests of judicial efficiency and economy would certainly support combining the two at one

hearing. Although French could have requested additional time before proceeding with the hearing

on the motion to certify as a child, Petitioner fails to explain how he was prejudiced by counsel's

decision to proceed with the combined hearing.  As discussed above, Petitioner had already been

certified to stand trial as an adult on the Accessory to Murder charge.  The subsequent hearing, held

November 4, 1998, was necessary since the charge had been amended to First Degree Murder, for

which Petitioner was presumed to be an adult.  French took the steps required for obtaining a reverse

---

resolving a motion to certify as a child, also known as a motion for reverse certification.

certification, i.e., filing a motion for certification as a child. Petitioner fails to identify any additional witnesses or information relevant to the factors under consideration for his motion to certify as a child that would have been available at a later date. This claim of ineffective assistance of certification counsel is without merit.

*c. Failure to file a motion in limine/motion to suppress statements made during police interviews*

The focus of the next omitted claim of ineffective assistance of certification counsel is counsel's failure to challenge the admissibility of Petitioner's statements to Detective McDonald. See Dkt. ## 1 and 43. On remand, Petitioner argues both that his statements made before the arrival of his mother at the police station as well as statements made after the arrival of his mother were inadmissible. See Dkt. # 43. Petitioner further argues that had his statements been suppressed, the remaining evidence would have been insufficient and he would not have been certified as an adult.

During the preliminary hearing portion of the hearing, Detective Alvin McDonald testified concerning events at the scene of the shooting, statements made by Petitioner at the police station while being interviewed as a witness, and statements made by Petitioner after his mother arrived and he had been informed of his rights under Miranda.[5]  The record demonstrates that Petitioner's attorney objected to Detective McDonald's testimony "based on 7303.3.1." See Dkt. # 38, part 2, Trans. at 35. That objection was taken under advisement by the trial court judge. Id.  The prosecutor then asked Detective McDonald questions serving to clarify the sequence of events that began as an interview of Petitioner as a witness but eventually morphed into a custodial interrogation as a result of statements made by Petitioner implicating his role in the shooting. Id. at 37-39. At the conclusion of Detective McDonald's testimony, attorney French asked the trial court judge,

---

[5]Miranda v. Arizona, 384 U.S. 436 (1966).

"whether there is (sic) special considerations as to what merits the custodial -- or what defines custodial interrogation as to a juvenile versus what would constitute custodial interrogation?" Id. at 47. Petitioner's counsel then demurred to the evidence and proceeded to argue the bases for suppressing the statements made to Detective McDonald. Id. at 47-48. After hearing argument from the prosecutor, the trial court judge took both the demurrer and the probable cause issues under advisement until the conclusion of the presentation of evidence on the motion to certify as a child. Id. at 48-49. At the conclusion of the hearing, the trial court overruled the motion to certify as a child, finding that "this young man needs to stand trial as an adult." Id. at 74. The trial court further found that "probable cause exists that Jesil Wilson did, in fact, commit crime of Murder in the First Degree against a Mitchell Knighten." Id. at 75. However, the trial court sustained the demurrer to Count 2, Accessory to Murder. Id.

The Court finds that under Oklahoma law, specifically, Okla. Stat. tit. 10, § 7303-3.1(A) (Supp. 1997),[6] any statements made by Petitioner to Detective McDonald prior to the arrival of his mother should have been suppressed. Although certification counsel may have performed deficiently in failing to argue effectively for the suppression of Petitioner's statements made to Detective McDonald prior to the arrival of his mother, the Court finds that in light of other evidence presented

---

[6]In relevant part, Okla. Stat. tit. 10, § 7303-3.1(A), provides as follows: "[n]o information gained by a custodial interrogation of a child or a youthful offender under sixteen (16) years of age nor any evidence subsequently obtained as a result of such interrogation shall be admissible into evidence against the child or youthful offender unless the custodial interrogation about any alleged offense by any law enforcement officer . . . is done in the presence of the parents, guardian, attorney, adult relative, adult caretaker, or legal custodian of the child or youthful offender . . . As used in this section, 'custodial interrogation' means questioning of a child or youthful offender under sixteen (16) years of age while that child or youthful offender is in law enforcement custody or while that child or youthful offender is being deprived of freedom of action in any significant way by law enforcement officer . . . ."

at the preliminary hearing, Petitioner did not suffer prejudice as required under <u>Strickland</u>. Significantly, at a motion hearing held approximately two (2) months after the preliminary hearing, on January 26, 1999, the trial court heard argument on Petitioner's motion to suppress the statements made prior to his mother's arrival and sustained the motion.  <u>See</u> Dkt. # 38, part 4, Trans. dated January 26, 1999, at 4.  As a result, those statements were not introduced at trial through the testimony of Detective McDonald. However, the state courts were never asked to determine the admissibility of statements made by Petitioner after he and his mother signed rights waivers and after he was informed of his rights under <u>Miranda</u>. As a result, those statements were never found to be inadmissible by the state courts and were presented through the testimony of Detective McDonald at Petitioner's jury trial.

Petitioner now argues that his certification counsel provided ineffective assistance in failing to challenge his post-<u>Miranda</u> statements as inadmissible because (1) his mother was not present for the post-<u>Miranda</u> interrogation, and (2) there was no valid waiver of the Fifth Amendment right against self-incrimination.[7]  <u>See</u> Dkt. # 43 at 9-15.  In support of those arguments, counsel for Petitioner provides new affidavits of Petitioner, <u>see</u> Dkt. # 43, Ex. 1, and his mother, <u>id.</u>, Ex. 2, executed in July and August 2007, respectively, or more than eight (8) years after the pretrial hearing held on the motion to certify as a child.  Statements in those affidavits regarding whether Petitioner's mother was present during the interrogation are directly refuted by the record made at the time of the hearing. During the hearing on the motion to certify as an adult, the following

---

[7]Petitioner did not raise this claim in his petition.  The claim is before this Court for the first time on remand.

exchange took place during the direct examination of Detective McDonald by Assistant District

Attorney Funderburk:

> Q:      [T]ell me about where were you when you interviewed him.
>
> A:      In the detective division.
>
> Q:      Did you have a chance to have the mother present?
>
> A:      Yes, I did.
>
> Q:      And do you recall her name?
>
> A:      Miss Cinderella Wilson.
>
> Q:      Did you have an opportunity to read a Miranda Rights to the juvenile and the mother?
>
> A:      Yes, we did.
>
> Q:      And were they afforded the opportunity to sign a rights waiver?
>
> A:      Yes, they did.
>
> Q:      Now, Cinderella Wilson, is she known by any other names?
>
> A:      I believe she signed it Cinderella Ferguson, I'm not sure.
>
> Q:      During your course of you -- you've done the rights waiver.  Did the defendant make any statements to you?
>
> A:      Yes, he did.
>
> Q:      What were those?
>
> A:      He advised that he and Zachary, his cousin, were going to the victim's house, Mr. Knighten's house, to retrieve his gun that Mr. Knighten had taken from him on New Year's Eve, and if he didn't get the gun back, the plan was to fix it where Mr. Knighten would never walk again, paralyze him.
>
> Q:      And this is statements made by Mr. Wilson to you?
>
> A:      Yes, it was.

24

* * * * * *

Q:      I want to show you what's been marked as State's Exhibit No. 1.  Can you identify that for me?

A:      Yes, I can.  This is a juvenile notification of rights.

Q:      And do you recognize the signatures?

A.      Yes, I do.

Q:      What are those signatures?

A:      Cinderella Ferguson, signature of parent-guardian; Jesil Wilson, signature of juvenile.

Q:      Are there any boxes marked on that?

A:      "Juvenile offenders 13, 14, or 15 years of age arrested for first degree murder qualify for reverse certification.  Juvenile offenders 16 or 17 years of age arrested for one of the following offenses qualify for reverse" --

Q:      Let me stop you right there.  Was there a box signed above their signatures?

A:      Yes.

Q:      What is that box?

A:      "I want the juvenile to answer questions or make statements at this time."

Q:      Now, again, I'm getting in reverse order.  At the top of that sheet, are those the Miranda Rights that were read to the juvenile and the mother?

A:      Yes, it is.

Q:      And then what did they execute next after those were read?

A:      They executed their right to speak with the detective regarding this case.

(Dkt. # 38, part 2, Trans. at 31-32, 39-40).  That record indicates that law enforcement officials took steps to comply with the statutory requirement that an interrogation of a juvenile takes place in the presence of a parent or guardian.  See Okla. Stat. tit. 10, § 7303-3.1(A) (Supp. 1997).  It also

25

indicates that law enforcement officials took steps to insure that Petitioner and his mother were aware of his constitutional rights prior to obtaining his statement.  The record also contains a copy of the juvenile notification of rights and waiver signed by both Petitioner and his mother.  <u>See</u> Dkt. # 43, Ex. 5. By signing that form, Petitioner and his mother acknowledged that they had read the statement of rights required by <u>Miranda</u> and that they had the opportunity to ask any questions concerning the rights. <u>Id.</u>  The box beside the statement, "I want the juvenile to answer the questions or make a statement at this time," was checked followed by the signatures of Petitioner and his mother. <u>Id.</u> After considering the circumstances reflected by the record compiled at the time of the statement and the subsequent hearing, the Court cannot find that certification counsel performed deficiently in failing to file a motion to suppress statements made by Petitioner to Detective McDonald after his mother arrived at the police station and after receiving a <u>Miranda</u> warning and signing a rights waiver. This claim of ineffective assistance of certification counsel is without merit.

<em>d. Failure to present Petitioner's defense</em>

As his fourth claim of ineffective assistance of certification counsel omitted by appellate counsel, Petitioner complains that attorney French "further failed and prejudiced me in failing to assert and predicate my self-defense, as it was mandatory he comply with *discovery* and *evidence* codes concerning incidents and acts of violence by the decedent, Mitchell Knighten." (Dkt. # 1 at 16 (emphasis in original)). Petitioner argues that counsel failed to present evidence "of past aggression and the fact the victim was part of the top echelon of a local gang and who also had an impressive history of assaults, shootings and violence. Most people were scared to death of him." <u>Id.</u>

A preliminary hearing is the right given by the Bill of Rights for benefit of the defendant. Beaird v. Ramey, 456 P.2d 587, 589 (Okla. Crim. App. 1969). The purpose is to determine whether probable cause exists as to whether a crime in fact occurred and whether the Defendant had anything to do with it. Id. "[A] preliminary hearing is not a trial, and the quantity of evidence required is less than that of a trial, in that the purposes of a preliminary hearing are not as stringent as those of a trial." Snow v State 453 P.2d 274, 277 (Okla. Crim. App. 1969). "A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." Barber v. Page, 390 U.S. 719, 725 (1968).The court is authorized to terminate the preliminary hearing once probable cause is established. Adams v. Illinois, 405 U.S. 278, 282 (1972). Nonetheless, a defendant certainly has a right to produce evidence material to the two issues. Beaird, 456 P.2d at 589. The materiality of evidence as to these two issues is broad in scope and the magistrate should restrict the testimony with caution, or else defendant may be denied his Constitutional right to be confronted with his accusers. Id.

The Court finds that certification counsel did not perform deficiently in failing to present evidence of the victim's history of violence at the preliminary hearing. Even if the evidence were admissible, it was not material to the issues to be determined at the preliminary hearing: whether a crime in fact occurred and whether the Defendant had anything to do with it.  To the extent Petitioner claims that there were other potential witnesses who were with him the night of the shooting and who could have testified at the preliminary hearing that Petitioner "planned nothing," the Court notes that with one exception, no such testimony was presented at Petitioner's trial. The one exception was Zachary Ferguson, Petitioner's cousin, who testified for the defense that he shot

Mitchell Knighten in the back in self-defense.[8]  Petitioner's only other acquaintance who testified at trial was Kelvin Kelly, a witness for the State. Kelly testified that Petitioner was upset about his gun being taken from him at Skate World by Mitchell Knighten and that Petitioner talked about getting it back over the weekend preceding the shooting. See Tr. Trans. Vol. I at 138. According to Kelly, Petitioner said it "felt funny to waste him" and that "he felt no remorse." Id. at 147. Kelly also testified that he did not remember telling Officer McDonald that they had plotted the whole thing out, but he also said he did not lie at the time of his interview with Officer McDonald. Id. at 157. In light of the testimony presented at trial, the Court finds that Petitioner was not prejudiced by his attorney's failure to present defense witnesses at the preliminary hearing.  This claim of ineffective assistance of certification counsel is without merit.

*e. Failure to move for a competency evaluation*

Nothing in the record suggests, and Petitioner does not assert, that he was incompetent at the time of the hearing. Therefore, certification counsel did not perform deficiently in failing to move for a competency evaluation. This claim of ineffective assistance of certification counsel is without merit.

After careful review of the record, the Court concludes that the underlying claims of ineffective assistance of certification counsel lack merit. As a result, Petitioner has failed to demonstrate that his appellate counsel performed deficiently in failing to raise the claims on direct appeal. Therefore, ineffective assistance of appellate counsel cannot serve as cause to overcome the procedural bar applicable to the claims.  The Court also finds that any claim of ineffective assistance

---

[8]At the time of Petitioner's trial, Ferguson had already been convicted of First Degree Murder and was serving a sentence of life without the possibility of parole.

of counsel based on the failure of any of Petitioner's attorneys to appeal or to seek an appeal out of time from the denial of the application for certification as a child cannot serve as "cause" because those claims have never been presented to the state courts.   Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000). Petitioner has failed to demonstrate cause sufficient to excuse the procedural default of his claims in state court.

### 2. Fundamental miscarriage of justice

Petitioner's only other means of gaining federal habeas review is a claim of actual innocence under the fundamental miscarriage of justice exception. Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992).  To meet this test, a criminal defendant must make a colorable showing of factual innocence.  Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404).  In his pleadings, Petitioner asserts that he is not guilty of premeditated murder because he did not possess the requisite intent.  See, e.g., Dkt. # 1 at 16.  As stated in the Court's prior Order denying habeas relief, that claim goes to legal innocence and does not go to factual innocence.  As a result, the Court concludes that Petitioner does not fall within the fundamental miscarriage of justice exception. Beavers, 216 F.3d at 923.

Having failed to overcome the procedural bar imposed on his claims, this Court is precluded from considering Petitioner's claims of ineffective assistance of certification counsel arising from the hearing on his application for certification as a child.  For that reason, habeas corpus relief shall be denied as to those claims.

*CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  His request for habeas corpus relief shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** Petitioner's request for habeas corpus relief based on ineffective assistance of certification counsel (Dkt. # 1) is **denied**. Petitioner's "renewed application for hearing" (Dkt. # 44) is **denied**. Petitioner's application for a status conference (Dkt. # 45) is **declared moot**. A separate judgment shall be entered in this matter.

DATED THIS 13th day of May, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT